Ariadne Panagopoulou (AP-2202)
Pardalis & Nohavicka, LLP
3510 Broadway, Suite 201
Astoria, NY 11106
Telephone: (718) 777-0400
Facsimile: (718) 777-0599
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Hosang Lee and Miguel Beato Galvez, *on behalf of themselves and others similarly situated,* )<br>)<br>)<br>)<br>Plaintiffs, )<br>)<br>-v- )<br>)<br>)<br>Quimera Restaurant Group LLC, Quimera 999 Atlantic LLC, and Hector Sanz, *jointly and severally,* )<br>)<br>)<br>)<br>Defendants. ) | **COLLECTIVE ACTION COMPLAINT** |

## NATURE OF THE ACTION

1.    Plaintiffs Hosang Lee and Miguel Beato Galvez ("Plaintiffs"), bring this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et. seq.* on behalf of themselves and others similarly situated, in order to remedy Defendants' wrongful withholding of Plaintiffs' overtime compensation. Plaintiffs also bring these claims under New York Labor Law ("NYLL"), Article 6, §§ 190 *et. seq.*, as well as the supporting New York State Department of Labor Regulations for violations of overtime wages, spread-of-hours pay, and failure of the Defendants to comply with notice and record-keeping requirements.

1

## SUMMARY

2.     Plaintiffs were formerly employed by Defendants, Quimera Restaurant Group LLC, Quimera 999 Atlantic LLC, and Hector Sanz (collectively "Defendants").

3.     Plaintiffs' duties included, but were not limited to, performing maintenance work around the Defendants' restaurants, procuring food and material and delivering same to Defendants' restaurants, and performing construction on Defendants' business premises. On occasion, Plaintiff Hosang Lee would also distribute money to Defendants' employees, in accordance with instructions he received from Defendant Sanz.

4.     Throughout the course of their employment, Plaintiffs worked in excess of forty (40) hours per week. However, Plaintiffs were paid a fixed salary regardless of the hours they were working and were not paid at the overtime rate for work performed exceeding forty (40) hours per week.

5.     Plaintiffs never received spread-of-hours pay for all shifts worked when the interval between the beginning and end of each Plaintiff's shift exceeded ten (10) hours.

6.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

7.     As a result of Defendants' actions, Plaintiffs have suffered great hardship and damages.

8.     Defendants' conduct extended beyond the Plaintiffs to all other similarly situated employees. Plaintiffs seek certification of this action as a collective action on behalf of themselves individually and those other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216 (b).

**JURISDICTION AND VENUE**

**Federal Question Jurisdiction and Supplemental Jurisdiction**

9.    This Court has original subject matter jurisdiction over this action under 28 U.S.C. § 1331 because the civil action herein arises under the laws of the United States, namely, the Fair Labor Standards Act and 29 U.S.C. §201 *et seq*. Additionally, this Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. §1367(a).

**Personal Jurisdiction**

10.    This Court may properly maintain personal jurisdiction over Defendants under Rule 4 of the Federal Rules of Civil Procedure because Defendants' contacts with this state and this judicial district are sufficient for exercise of jurisdiction over Defendants so as to comply with traditional notions of fair play and substantial justice.

**Venue**

11.    Venue is proper in the Southern District of New York under 28 U.S.C. §§ 1391 (b) (1) and (2) because Defendants reside and conduct business in this judicial district and because a substantial part of the acts or omissions giving rise to the claims set forth herein occurred in this judicial district.

**THE PARTIES**

**Plaintiffs**

**Hosang Lee**

12.    Plaintiff Hosang Lee ("Lee") is an adult individual residing in the state of New York, County of Kings.

13.    Lee is a covered employee within the meaning of the NYLL § 190.

14.    Lee was employed by Quimera Restaurant Group LLC and Quimera 999

Atlantic LLC, owned by Defendant Hector Sanz, from 2007 to September 6, 2013. He worked in all three restaurants owned by Defendants, namely Rayuela, located at 165 Allen street New York, NY 10002, Macondo, located at 157 E. Houston street New York, NY 10002 and Barraca, located at  81 Greenwich Ave, New York, NY 10014.

15.    Lee's duties included performing maintenance work around the Defendants' restaurants, procuring food and material and delivering same to Defendants' restaurants, and performing construction on Defendants' business premises.

16.    On occasion, Plaintiff Hosang Lee would also distribute money to Defendants' employees, in accordance with instructions he received from Defendant Sanz.

17.    Notwithstanding the above, Lee would never determine an employee's rate of pay, schedule or hours of works, nor would he determine the frequency whereby an employee would receive a paycheck.

18.    Lee was not involved in the hiring or firing of employees.

19.    Lee regularly handled goods in interstate commerce throughout the course of his employment with Defendants, such as fish, produce, meat, and other raw materials and ingredients used in the restaurant industry, imported from all over the world and distributed to Defendants' restaurants in the State of New York.

20.    Lee was directly supervised by Individual Defendant, Hector Sanz, who was responsible for, *inter alia*, hiring and firing employees, setting their wages and schedules, and general staff management.

21.    During the period of his employment with Defendants, Lee typically worked six (6) days per week, from Monday to Saturday, from 7:00 a.m. to 4:00 p.m. or 5:00 p.m. However, on certain occasions, depending on the amount of work assigned to him, he would

work even after 5:00 p.m. Lee would frequently take a lunch break that would not exceed half an hour.

22.     Accordingly, Lee worked an average of fifty-five (55) or more hours per week, throughout his employment with the Defendants.

23.     From 2007 to 2011, Lee was compensated at an hourly rate of Twelve Dollars ($12.00) per hour for all hours worked. From 2011 to some point in 2012, Lee received an annual salary of Sixty-Five Thousand Dollars ($65,000.00), payable weekly. From 2012 to 2013, Lee's annual salary was increased to Seventy-Five Thousand Dollars ($75,000.00), payable weekly.

24.     Throughout his employment, Lee received the same amount of money regardless of his hours worked.

25.     Lee was compensated in equal portions constituting fifty percent (50.0%) of his salary, each, via cash and check.

26.     Defendants repeatedly suffered or permitted Lee to work in excess of forty (40) hours per week without paying him the appropriate premium overtime pay of one and one-half times his regular rate of pay.

27.     Defendants never paid Lee any spread-of-hours compensation of one hour's pay at the basic minimum hourly wage rate, for each day during which the interval between the beginning and end of Lee's shift exceeded ten (10) hours.

28.     Lee was not given any pay stubs showing his hours worked and there was no system in place to record or keep track of Lee's hours.

29.     Lee was not provided with a wage notice containing, *inter alia*, the rate and basis of his pay; the designated pay date; and the employer's name, address and telephone

number at the time of hiring or at any point thereafter.

30.    Lee was never provided with wage statements or other records detailing, *inter alia*, Lee's regular hourly rate of pay; the overtime rate of pay; the number of regular hours worked; and the number of overtime hours worked at any point during the time of his employment with Defendants.

31.    Upon information and belief, while Defendants employed Lee, they failed to post notices explaining the minimum and overtime wage rights of employees under the FLSA and NYLL and failed to inform Lee of such rights.

32.    Throughout the duration of his employment, Lee did not have any supervisory authority over any of Defendants' employees, nor did he exercise discretion or independent judgment with respect to matters of significance.

**Miguel Beato Galvez**

33.    Plaintiff Miguel Beato Galvez ("Galvez") is an adult individual residing in the state of New York, Bronx County.

34.    Galvez is a covered employee within the meaning of the FLSA, 29 U.S.C. § 203(e) and the NYLL § 190.

35.    Galvez was employed by Quimera Restaurant Group LLC and Quimera 999 Atlantic LLC, owned by Hector Sanz, from 2009 to mid- 2015. He worked in all three restaurants owned by Defendants, namely Rayuela, located at 165 Allen street New York, NY 10002, Macondo, located at 157 E. Houston street New York, NY 10002 and Barraca, located at 81 Greenwich Ave, New York, NY 10014.

36.    Galvez's duties included performing maintenance work around the Defendants'

restaurants, procuring food and material and delivering same to Defendants' restaurants, and performing construction on Defendants' business premises.

37.     Galvez regularly handled goods in interstate commerce throughout the course of his employment with Defendants, such as fish, produce, meat, and other raw materials and ingredients used in the restaurant industry, delivered from all over the world and distributed to Defendants' restaurants located in the State of New York.

38.     Galvez was directly supervised by Individual Defendant, Hector Sanz, who was responsible for, *inter alia*, hiring and firing employees, setting their wages and schedules, and general staff management.

39.     During the period of his employment with Defendants, Galvez typically worked six (6) days per week, from Monday to Saturday, from 8:00 a.m. to 6:00 p.m. Depending on the amount of work on certain days, he occasionally would work even after 6:00 p.m. Galvez did not receive a lunch break during his employment with Defendants; he would typically take 10 minutes to eat whenever work was slow.

40.     Accordingly, Galvez worked an average of sixty (60) hours per week, throughout his employment with the Defendants.

41.     During the first three years of his employment with Defendants, Galvez was compensated at a fixed rate of Four Hundred Fifty Dollars ($450.00) per week, irrespective of the amount of hours he worked. Thereafter, Galvez received One Hundred Dollars ($100.00) per day he worked, irrespective of the hours he worked.

42.     Galvez was always compensated in cash.

43.    Defendants repeatedly suffered or permitted Galvez to work in excess of forty (40) hours per week without paying him the appropriate premium overtime pay of one and one-half times his regular rate of pay.

44.    Defendants never paid Galvez any spread-of-hours compensation of one hour's pay at the basic minimum hourly wage rate, for each day during which the interval between the beginning and end of Galvez's shift exceeded ten (10) hours.

45.    Galvez was not given any pay stubs and there was no system in place to record and keep track of Galvez's hours.

46.    Galvez was not provided with a wage notice containing the rate and basis of his pay; the designated pay date; and the employer's name, address and telephone number at the time of hiring or at any point thereafter.

47.    Galvez was never provided with wage statements or other records detailing, *inter alia*, Galvez's regular hourly rate of pay; the overtime rate of pay; the number of regular hours worked; and/or the number of overtime hours worked at any point during the time of his employment with Defendants.

48.    Upon information and belief, while Defendants employed Galvez, they failed to post notices explaining the minimum wage rights of employees under the FLSA and NYLL and failed to inform Galvez of such rights.

49.    Throughout the duration of his employment, Galvez did not have any supervisory authority nor did he exercise discretion or independent judgment with respect to matters of significance.

50.    Galvez consented in writing to be a party to the FLSA claims in this action, pursuant to 29 U.S.C. §216(b).

51.    Galvez has personal knowledge of other employees in Defendants' restaurants who were paid a flat salary and were not paid overtime for all hours worked above forty hours per week.

**Defendants**

52.    At all relevant times, Individual and Corporate Defendants were joint employers of Plaintiffs, acted in the interest of each other with respect to Plaintiffs' and other employees' remuneration, and had common policies and practices as to wages and hours, pursuant to 29 C.F.R. § 791.2. Factors indicating joint employment include:

a.    Corporate Defendants all suffered or permitted Plaintiffs to work.

b.    Each of the Defendants acted directly or indirectly in the interest of one another in relation to Plaintiffs and similarly situated employees.

c.    Defendants each have an economic interest in the locations in which Plaintiffs and similarly situated employees worked.

d.    Defendants all simultaneously benefitted from Plaintiffs' work.

e.    Defendants each had either functional and/or formal control over the terms and conditions of work of Plaintiffs and similarly situated employees.

f.    Plaintiffs and similarly situated employees performed work integral to each Corporate Defendant's operation.

53.    In the alternative, all Defendants functioned together as a single integrated employer of Plaintiffs within the meaning of the FLSA and NYLL.

54.    Upon information and belief, Corporate Defendants Quimera Restaurant Group LLC, and Quimera 999 Atlantic LLC are related entities and operate together as a single integrated enterprise. Specifically, both entities are owned, managed, and operated by the same Individual Defendant; Hector Hanz. All three Defendants together own and manage three

restaurants, namely Rayuela, located at 165 Allen street New York, NY 10002, Macondo, located at 157 E. Houston street New York, NY 10002 and Barraca, located at 81 Greenwich Ave, New York, NY 10014.

55.    Upon information and belief, non-exempt workers at one restaurant perform the same job duties, are subject to the same employment policies and practices, and are directed and/or permitted by Defendants to perform work at multiple locations without retraining.

56.    Accordingly, all non-exempt employees working at any one restaurant at a particular instance were simultaneously considered and accounted for as employees of all restaurants collectively.

## Corporate Defendants

### Quimera Restaurant Group LLC

57.    Quimera Restaurant Group LLC is a domestic limited liability company formed on February 18, 2009, organized and existing under the laws of the State of New York.

58.    Quimera Restaurant Group LLC owns and operates several restaurants throughout the five boroughs of the City of New York, which specialize in Latin American cuisine and Latin American-centered fusion cuisine.

59.    The central focal point of operations for these restaurants and services related to the Defendants' business was at 999 Atlantic Avenue, Brooklyn, New York, 11238.

60.    At all relevant times, Quimera Restaurant Group LLC was a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and the NYLL § 190.

61.    At all relevant times, Quimera Restaurant Group LLC maintained control, oversight, and direction over the Plaintiffs, including timekeeping, payroll and other employment practices that applied to them.

62.    At all relevant times, Quimera Restaurant Group LLC was "an enterprise engaged in commerce" within the meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A) because its employees handled goods and/or materials that have been imported, produced, and/or distributed in interstate commerce. Additionally, Quimera Restaurant Group LLC conducted business with vendors and other businesses outside the State of New York and engaged in credit card transactions involving banks and other institutions outside the State of New York.

63.    Upon information and belief, at all relevant times, Quimera Restaurant Group LLC's annual gross volume of sales made, or business done, was not less than Five Hundred Thousand Dollars ($500,000.00) exclusive of separate retail excise taxes, within the meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A)(ii).

**Quimera 999 Atlantic LLC**

64.    Quimera 999 Atlantic LLC is a domestic limited liability company formed on July 27, 2011, organized and existing under the laws of the State of New York.

65.    Quimera 999 Atlantic LLC owns and operates a freight shipping and trucking business in the City of New York, which transports raw materials and ingredients, including but not limited to: fresh produce, meat, refrigerated foods, beverages, paper products, and freight to restaurants and other entities throughout the region.

66.    The central focal point of operations for these restaurants and services related to the Defendants' business was at 999 Atlantic Avenue, Brooklyn, New York, 11238.

67.    At all relevant times, Quimera 999 Atlantic LLC was a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and the NYLL § 190.

68.    At all relevant times, Quimera 999 Atlantic LLC maintained control, oversight,

and direction over the Plaintiffs, including timekeeping, payroll and other employment practices that applied to them.

69.     At all relevant times, Quimera 999 Atlantic LLC was "an enterprise engaged in commerce" within the meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A) because its employees handled goods and/or materials that have been imported, produced, and/or distributed in interstate commerce. Additionally, Quimera 999 Atlantic Group LLC conducted business outside the State of New York and engaged in credit card transactions involving banks and other institutions outside the State of New York.

70.     Upon information and belief, at all relevant times, Quimera Restaurant Group LLC's annual gross volume of sales made, or business done, was not less than Five Hundred Thousand Dollars ($500,000.00) exclusive of separate retail excise taxes, within the meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A)(ii).

**Individual Defendant**

**Hector Sanz**

71.     Upon information and belief, at all relevant times throughout Plaintiffs' employment, Hector Sanz ("Individual Defendant") was owner, principal, authorized operator, manager, shareholder and/or agent of the Corporate Defendants.

72.     At all relevant times throughout Plaintiffs' employment, Individual Defendant had the discretionary power to create and enforce personnel decisions on behalf of the Corporate Defendants, including but not limited to: hiring and terminating employees; setting and authorizing issuance of wages; maintaining employee records; setting Plaintiffs' schedule; negotiating Plaintiffs' rate of pay; instructing, supervising and training Plaintiffs; and otherwise controlling the terms and conditions for the Plaintiffs while they were employed by

Defendants.

73.     At all relevant times throughout Plaintiffs' employment, Individual Defendant was actively involved in the day-to-day operations of both Corporate Defendants.

74.     Individual Defendant hired Lee in 2007; he directly supervised Lee throughout his employment. Lee resigned on September 6, 2013.

75.     Individual Defendant hired Galvez in 2009; he directly supervised Galvez throughout his employment. Galvez resigned at some point in mid- 2015.

76.     At all relevant times throughout Plaintiffs' employment, Individual Defendant was a "covered employer" within the meaning of the FLSA and the NYLL, and employed or jointly employed Plaintiffs, and is personally liable for the unpaid wages sought herein, pursuant to 29 U.S.C. § 203(d).

**COLLECTIVE ACTION ALLEGATIONS**

77.     Pursuant to 29 U.S.C. §§ 203, 207, and 216(b), Plaintiff Galvez bring his First, cause of action as a collective action under the FLSA on behalf of himself and the following collective:

> All persons employed by Defendants at any one of their three restaurant establishments at any time since January 8, 2015, and through the entry of judgment in this case (the "Collective Action Period") who worked as construction, maintenance workers and other non-exempt employees (the "Collective Action Members").

78.     A collective action is appropriate in these circumstances because Plaintiff Galvez and the Collective Action Members are similarly situated, in that they were all subject to Defendants' illegal policies of paying employees a flat salary with no overtime for all hours

worked above 40 hours per week.

79.    Plaintiff Galvez and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

80.    The claims of the Plaintiff Galvez stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

**Fair Labor Standards Act – Unpaid Overtime Wages**
**(Brought on behalf of Miguel Beato Galvez and the Collective Action Members)**

81.    Plaintiff Galvez, on behalf of himself and the Collective Action Members, realleges and incorporates by reference all allegations made in all preceding paragraphs as if fully set forth herein.

82.    At all relevant times, Plaintiff Galvez and the Collective Action Members, were employees of and employed by the Defendants within the meaning of the FLSA, 29 U.S.C. § 203(d), (e)(1), and (g).

83.    At all times relevant, Defendants have been employers of Plaintiff Galvez and the Collective Action Members and have engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 203 (s)(1) and 207(a).

84.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207(a)(1) and the supporting federal regulations apply to Defendants and protect Plaintiff Galvez and the Collective Action Members.

85.    Defendants failed to pay Plaintiff Galvez and the Collective Action Members overtime wages at a rate of one and one-half times the regular rate at which they were

employed, but under no instance less than one and one-half times the statutory minimum wage for all hours that they worked in excess of forty (40) hours per workweek.

86.     As a result of the Defendants' violations of the FLSA, Plaintiff Galvez and the Collective Action Members have been deprived of overtime compensation and other wages in amounts to be determined at trial, and are thus entitled to recovery of such amounts, liquidated damages, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216 (b).

87.     Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional. Defendants were aware, or should have been aware, that the practices described in this Complaint were unlawful.

88.     Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff Galvez and the Collective Action Members.

89.     Defendants failed to post or keep posted conspicuous notices of Plaintiffs' rights as required by the U.S. Department of Labor pursuant to 29 C.F.R. § 516.4, further evincing Defendants' lack of good faith.

90.     Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies pursuant to 29 U.S.C. § 255(a).

## SECOND CAUSE OF ACTION

### New York Labor Law – Unpaid Overtime Wages
### (Brought on behalf of both Plaintiffs)

91.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

92.     At all relevant times referenced herein, Plaintiffs were employees of the Defendants, and Defendants were employers of the Plaintiffs within the meaning of the NYLL §§ 190, 651 (5), 652, and other supporting New York State Department of Labor regulations.

93.     The overtime wage provisions, as set forth in NYLL §§ 190 *et seq.* and the supporting New York State Department of Labor regulations apply to Defendants and protect Plaintiffs.

94.     Defendants have failed to pay Plaintiffs overtime wages to which they are entitled at the wage rate of one and one-half times their regular rate, but under no instance less than one and one-half times the statutory minimum wage rate, as defined by New York State Department of Labor regulations, 12 N.Y.C.R.R. Part 142-2.2 and 12 N.Y.C.R.R. Part 146-1.4.

95.     Through their knowing or intentional failure to pay Plaintiffs their duly earned overtime wages for hours worked in excess of forty (40) hours per workweek, Defendants have violated the NYLL §§ 190 *et seq.* and supporting New York State Department of Labor regulations.

96.     Defendants' failure to pay Plaintiffs their overtime compensation lacked a good faith basis within meaning of NYLL § 663.

97.     Defendants also failed to post conspicuous notices of the Plaintiffs' rights under the law, as required by NYLL § 661 and New York State Department of Labor regulations, 12 N.Y.C.R.R. Part 142-2.8, and 12 N.Y.C.R.R. Part 146-2.4, further evidencing Defendants' lack of good faith.

98.     Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recovery of their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees  and costs of the action, pre-judgment and post-judgment interest, pursuant to NYLL § 198 (1-a).

## THIRD CAUSE OF ACTION

### New York Labor Law – Spread-of-Hours Pay
### (Brought on behalf of both Plaintiffs)

99.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

100.    The spread-of-hours provisions, as set forth in NYLL § 190 *et seq.* and the supporting New York State Department of Labor regulations, apply to the Defendants and protect the Plaintiffs.

101.    Defendants have failed to pay Plaintiffs spread-of-hours compensation of one hour's pay at the basic minimum hourly wage rate for each day during which the interval between the beginning and end of each Plaintiffs' shift exceeded ten (10) hours, as defined by the New York State Department of Labor regulations, 12 N.Y.C.R.R. Part 142-2.4 and 12 N.Y.C.R.R. Part 146-1.6.

102.    Through their knowing or intentional failure to pay Plaintiffs spread-of-hours compensation, Defendants have willfully violated the NYLL §§ 190 et seq., and the supporting New York State Department of Labor regulations.

103.    Defendants' failure to pay Plaintiffs spread-of hours compensation lacked a good faith basis within the meaning of NYLL § 663.

104.    Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover from Defendants their unpaid spread-of-hours pay, liquidated damages as provided for by the NYLL, attorneys' fees, costs, and pre-judgment and post-judgment interest, pursuant to NYLL § 198 (1-a).

## FOURTH CAUSE OF ACTION

### New York Labor Law – Failure to Provide Notice at Time of Hiring
### (Brought on behalf of both Plaintiffs)

105.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

106.    Defendants failed to provide Plaintiffs at the time of hiring or at any point thereafter, a notice containing their rate of pay and basis thereof, whether they were to be paid by the hour, shift, day, week, salary, piece, commission, or other; the regular pay day designated by the employer; the physical address of the employer's main office or principal place of business; the telephone number of the employer, and any additional information otherwise required by law, in violation of NYLL § 195(1).

107.    Due to Defendants' violations of the NYLL § 195(1), Plaintiffs are entitled to recover from Defendants statutory damages of fifty dollars ($50) per workweek that the violation occurred, up to a maximum of Two Thousand Five Hundred Dollars ($2,500), until February 26, 2015, and statutory damages of Fifty dollars ($50) per workday that the violation occurred, up to a maximum of Five Thousand Dollars ($5,000), thereafter, pursuant to NYLL § 198 (1-b).

## FIFTH CAUSE OF ACTION

### New York Labor Law - Failure to Provide Wage Statements
### (Brought on behalf of both Plaintiffs)

108.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

109.    Defendants have failed to provide Plaintiffs with wage statements listing, *inter alia*, their regular rate of pay; basis of pay; and overtime rate of pay, in violation NYLL § 195 (3).

110.    Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover from Defendants One Hundred Dollars ($100) for each work week that the violations occurred, up to a maximum of Two Thousand Five Hundred Dollars ($2,500), until February 26, 2015, and statutory damages of Two Hundred and Fifty dollars ($250) per workday that the violation occurred, up to a maximum of Five Thousand Dollars ($5,000), thereafter, pursuant to NYLL § 198 (1-d).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs seek the following relief:

A.    Issuance of a declaratory judgment that the practices complained of in this complaint are unlawful under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.,* New York Labor Law, Article 6, §§ 190 *et seq*., and supporting New York State Department of Labor regulations;

B.    Unpaid overtime wages under the FLSA and an additional and equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b) and the supporting United States Department of Labor regulations;

C.    Unpaid overtime wages, and spread-of-hours pay under NYLL, and an additional and equal amount as liquidated damages pursuant to NYLL §198(1-a) and § 663(1);

D.    Civil penalties of One Thousand One Hundred Dollars ($1,100.00) for each of Defendants' willful and repeated violations of the FLSA pursuant to 29 U.S.C. § 216(b);

E.      An award of statutory damages for Defendants' failure to provide Plaintiffs with wage notices at the time of their respective hiring, or at any point thereafter, pursuant to NYLL § 198 (1-b);

F.      An award of statutory damages for Defendants' failure to provide Plaintiffs with wage statements, pursuant to NYLL § 198 (1-d);

G.      A permanent injunction requiring Defendants to pay all statutorily required wages pursuant to the FLSA and NYLL;

H.      If liquidated damages pursuant to FLSA, 29 U.S.C. § 216(b) are not awarded, an award of prejudgment interest pursuant to 28 U.S.C. § 1961;

I.      An award of pre-judgment interest of nine per cent per annum (9%) pursuant to the New York Civil Practice Law and Rules §§ 5001-5004;

J.      An award of post-judgment interest pursuant to 28 U.S.C. § 1961 and/or the New York Civil Practice Law and Rules § 5003;

K.      An award of attorney's fees, costs, and further expenses up to Fifty Dollars ($50.00), pursuant to 29 U.S.C. § 216(b), and NYLL §§ 198 and 663(1);

L.      Such other relief as this Court shall deem just and proper.

Dated: New York, New York
        January 8, 2018

                                        Respectfully submitted,
                                        **PARDALIS& NOHAVICKA, LLP**

                        By:     /s/Ariadne Panagopoulou
                                Ariadne Panagopoulou (AP-2202)
                                *Attorneys for Plaintiffs*
                                35-10 Broadway, Suite 201
                                Astoria, New York 11106
                                Tel: 718.777.0400 | Fax: 718.777.0599
                                Email: ari@pnlawyers.com